FILED
COURT OF APPEALS
DIVISION II

2013 AUG 13 AM 10: 29

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DAN ISBELL, | No. 43230-7-II |
| Appellant, | |
| v. | |
| DEPARTMENT OF EMPLOYMENT SECURITY, STATE OF WASHINGTON, | UNPUBLISHED OPINION |
| Respondent. | |

PENOYAR, J. — Dan Isbell seeks judicial review of a decision by the Employment Security Department Commissioner holding him liable for an overpayment of $13,516 in unemployment benefits. Because the evidence supports the Commissioner's decision that Isbell failed to accurately report his weekly earnings and is at fault for the overpayment, we affirm.

## FACTS

Isbell has worked as a banquet cook for Alderbrook Resort and Spa since 2005. He earns $15.25 per hour and works between 15 and 40 hours per week.

Isbell began submitting the unemployment benefits claims at issue in January 2010. When he opened his claim, he received a copy of the Department's unemployment benefits claims kit. The kit explains how to submit a weekly claim for benefits and states that a claimant must report all gross income earned in a week. The kit adds that earning too much money during a week may make a claimant ineligible for benefits and that benefits may be denied if a claimant works full time.

When Isbell reported his earnings during the weeks at issue, he reported his hourly rate of $15.25 instead of his weekly gross pay. As a result, the Department paid him his full weekly unemployment benefit for 31 weeks in which he worked full time and was not eligible for any

benefits. It also paid him full benefits for an additional 32 weeks in which he worked part time and was eligible for only partial benefits.

The Department notified Isbell in April 2011 that it was questioning his weekly claims. The Department eventually determined that Isbell had underreported his earnings for more than a year and was responsible for the overpayment. Isbell appealed and appeared in a telephonic hearing before the Office of Administrative Hearings. He had "no clue" why, when calling in to report his claim each week, he had reported his hourly rate instead of his weekly earnings. Administrative Record (AR) at 105. On August 1, 2011, the Administrative Law Judge (ALJ) issued five initial orders addressing different weeks in 2010 and 2011 in which Isbell had submitted claims. These orders concluded that Isbell was either fully or partly employed during the weeks in question, that he was at fault in causing the resulting overpayment of unemployment benefits, and that he was therefore liable for the overpayment.

Isbell petitioned for review. Attached to his petition was part of an initial order issued in 2010 in which another ALJ found him without fault but still liable for an overpayment made during the last week of 2009.

After reviewing the written record and listening to the audio recording of the administrative hearing, the Commissioner concluded that Isbell's testimony that he was unaware he was being overpaid during the 63 weeks at issue in 2010 and 2011 was not credible. The Commissioner concluded further that Isbell was not eligible for any benefits during 31 weeks and that he was eligible for only partial benefits during 32 additional weeks. Because Isbell was at fault, the Commissioner ordered him to repay $13,516 in overpayments. After the Commissioner denied reconsideration, Isbell sought judicial review, and the superior court affirmed. Isbell now appeals the Commissioner's decision.

ANALYSIS

Isbell argues that the evidence was insufficient to support the Commissioner's decision that he received $13,516 in unemployment benefits to which he was not entitled and that he was at fault for the overpayment.

The Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, governs judicial review of a final administrative decision of the Employment Security Department Commissioner. *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). The WAPA allows a reviewing court to reverse an administrative decision if it is based on an error of law, if substantial evidence does not support the decision, or if the decision was arbitrary or capricious. RCW 34.05.570(3)(d), (e), (i); *Smith v. Emp't Sec. Dep't*, 155 Wn. App. 24, 32, 226 P.3d 263 (2010).

We review the decision of the Commissioner rather than the underlying decision of the ALJ and apply the WAPA standards directly to the record before the agency. *Tapper*, 122 Wn.2d at 402; *Smith*, 155 Wn. App. at 32. We consider a Commissioner's decision to be prima facie correct; the burden of demonstrating invalidity is on the party asserting the invalidity. *Smith*, 155 Wn. App. at 32. We review questions of law de novo, giving substantial weight to the agency's interpretation of the statutes it administers. *Smith*, 155 Wn. App. at 32. We review the Commissioner's findings of fact for substantial evidence, but unchallenged findings are verities. *Tapper*, 122 Wn.2d at 407; *Smith*, 155 Wn. App. at 32.

A person must be unemployed to be eligible for unemployment benefits. RCW 50.20.010(1). A person is "unemployed" during any week in which he performs no services and receives no remuneration for services, and during any week of less than full time work "if the remuneration payable . . . is less than one and one-third times the individual's weekly benefit

3

amount plus five dollars." Former RCW 50.04.310(1) (2007). Remuneration includes all compensation paid for personal services. RCW 50.04.320(4)(a). If a claimant meets the definition of "unemployed" in RCW 50.04.310, he is eligible for unemployment benefits, but his weekly benefit amount is subject to reduction if he earned any wages during the week claimed. RCW 50.20.130(2); *see also* WAC 192-140-005(5)(g) (weekly unemployment claim must include any earnings and the number of hours the claimant worked).

It is undisputed that Isbell worked for Alderbrook while he was filing the unemployment claims at issue. Isbell does not challenge the ALJ's findings of fact, which the Commissioner adopted. These findings explain that for 31 weeks in 2010 and 2011, Isbell was fully employed and ineligible for benefits. The findings set forth the earnings Isbell reported for these weeks and the amount of money he actually earned. Based on these unchallenged findings, the Commissioner properly concluded that Isbell was not eligible for unemployment compensation during the 31 weeks at issue.

Additional findings explain that Isbell had partial earnings in 32 other weeks during 2010 and 2011. These unchallenged findings support the Commissioner's conclusion that Isbell's benefit amount was subject to reduction based on that income.

Claimants must repay the full amount of an overpayment unless they are granted a waiver. WAC 192-220-017(1). The Commissioner may not waive overpayments that are attributable to the claimant's fault. RCW 50.20.190(2); WAC 192-220-017(3)(a). A claimant is at fault for an overpayment when he (1) was paid and kept benefits in an amount greater than he was entitled to receive; (2) provided incorrect information, did not disclose information that should have been disclosed, or caused another person to fail to disclose information; and (3) had notice that the information should have been reported, including notice from written

communications such as the Department's unemployment claims kit and directives. WAC 192-220-020(1).

The unemployment claims kit specifically informs all claimants that they are required to report their gross weekly wages. The Department provides this kit to each person who applies for unemployment benefits, and it provided the kit to Isbell. WAC 192-120-010(2). Each person who receives the kit is presumed to understand its contents, unless he seeks help in doing so, and he is responsible for reporting and filing claims in accordance with its instructions. WAC 192-120-001(3); WAC 192-120-010(3), (5), (7).

Isbell argues that he did not receive adequate notice of his mistake in reporting his earnings, however, because the Department failed to explain that mistake when it issued an earlier overpayment order in 2010.[1] That order stated that the Department overpaid benefits during a week when Isbell earned $251.63 and that he was liable for the overpayment of $185, even though there was no evidence of fault. Isbell's argument that this order exonerates him from fault for the overpayment here is without merit, as the 2010 order concerned a different claim and investigation. Isbell claims that if the Department had done a better job of communicating during the course of the 2010 claim, he would have understood that he should not have reported as he did for the time periods involved in the current claim. But he fails to explain what the Department could have said or done in administering the 2010 claim that would have prevented the mistakes he made here. Furthermore, as the Department points out, the 2010

---

[1] We disagree with the Department that this decision is not part of the agency record. Isbell referred to it during his testimony before the ALJ, and the Commissioner addressed it in his conclusions of law. AR 106-07, 793. The order is part of the agency record and is properly part of our analysis here. *See Okamoto v. Emp't Sec. Dep't*, 107 Wn. App. 490, 494, 27 P.3d 1203 (2001) (judicial review of agency action is generally confined to agency record). We do not consider the accompanying transcript that Isbell provides, however, since that transcript is not part of the agency record.

order should have alerted Isbell to the fact that his unemployment compensation was subject to reduction based on his gross weekly earnings.

Having received the Department's unemployment claims kit as well as the 2010 order explaining that a claimant is responsible for the overpayment when his benefit amount is not reduced by his earnings, Isbell was at fault for failing to provide accurate information regarding his earnings during the weeks at issue. The Commissioner determined that Isbell's claim that he did not know he was being overpaid was not credible, and we defer to that finding. *See Smith*, 155 Wn. App. at 35-36 (we do not substitute our judgment for that of the agency regarding witness credibility). The Commissioner properly concluded that because Isbell was not free from fault, he was liable for the $13,516 overpayment.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Penoyar, J.

We concur:

_____
Quinn-Brintnall, J.

_____
Johanson, A.C.J.

6